# IN THE COURT OF APPEALS OF IOWA

No. 20-0304
Filed July 22, 2020

**IN THE INTEREST OF O.B.,**
**Minor Child,**

**S.C., Mother,**
    Petitioner-Appellee,

**J.B., Father,**
    Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District

Associate Judge.


        A father appeals from an order terminating his parental rights to his minor

child. **AFFIRMED.**


        Susan R. Stockdale, West Des Moines, for appellant father.

        Amy K. Davis of Babich Goldman, P.C., Des Moines, for appellee mother.

        Laura Lockwood of Hartung Schroeder LLP, Des Moines, attorney and

guardian ad litem for minor child.


        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

J.B. appeals from the termination of his parental rights with respect to minor child O.B. We find termination to be warranted under Iowa Code sections 600A.8(3)(b) and 600A.8(4) (2019), and we affirm.

**Background Facts and Proceedings**

S.C. is the mother and J.B. is the father of minor child O.B, born in 2011. In 2015, S.C. filed a petition for dissolution of her marriage to J.B. The parties' stipulation was approved by a dissolution decree in January 2016. At the time of the divorce, J.B. owned a framing and construction business. He closed the business in 2017 and worked sporadically in 2018. In 2019, he worked for part of the year as a project manager for a construction company.

On June 18, 2019, S.C. filed a petition seeking to terminate J.B.'s parental rights on the grounds of abandonment, pursuant to Iowa Code section 600A.8(3)(b), and lack of financial support, pursuant to section 600A.8(4).

When service of the petition was attempted, J.B. brandished a firearm and threatened the process server, pointing the weapon at the process server's chest. J.B., in demonstrating to the process server that he was taking the safety off the weapon, inquired of the process server's knowledge of Double 00 Buck and what it would do to a human body. J.B. is a felon, and his possession of the firearm was unlawful, as was his possession of several other firearms. He was arrested and granted pretrial release. Following violations of the conditions of his pretrial release, he was incarcerated in October 2019. As of January 13, 2020, J.B. owed $12,705.20 in child support. A hearing on the petition to terminate J.B.'s parental rights was held on January 17. The district court found that J.B.'s parental rights

should be terminated pursuant to Iowa Code sections 600A.8(3)(b) and 600A.8(4). J.B. appeals from this January 21, 2020 order terminating his parental rights.

**Standard of Review**

"Private termination proceedings under chapter 600A are reviewed de novo." *In re B.H.A.*, 938 N.W.2d 227, 231 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

**Discussion**

"Private termination proceedings under Iowa Code chapter 600A are a two-step process." *B.H.A.*, 938 N.W.2d at232. First, the petitioner "must first prove by clear and convincing evidence the grounds for ordering termination of parental rights." *Id.* Second, the petitioner "must prove by clear and convincing evidence that termination is in the best interest of [the child]." *Id.*

Here, the district court found termination was warranted under sections 600A.8(3)(b) and 600A.8(4). We first consider whether clear and convincing evidence supports these statutory grounds.

A. Abandonment

We begin by examining the statutory language for abandonment under section 600A.8(3)(b), which provides,

> a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The evidence shows J.B. did not visit the child at least monthly when able to do so, was not in regular communication with the child or the mother, and did not live with the child for a period of six months prior to the termination hearing. We agree with the district court's determination that J.B. abandoned the child within the meaning of section 600A.8(3)(b).

The district court found J.B. "failed to maintain any kind of regular contact with the child for almost five years." This finding is supported by clear and convincing evidence. S.C. testified that J.B. has attempted to have a visit with O.B. "two, maybe three times" since the January 2016 dissolution decree. When asked at the hearing whether he had had any visitation with his daughter since the divorce, J.B. responded "I have not had any." J.B. testified, "I wouldn't be surprised" if O.B. had no significant memories of him, saying it was "[d]efinitely partly my fault, mostly," and "the situation we're in has definitely been because of my actions."

J.B. attributes his lack of presence in O.B.'s life to a lack of knowledge of S.C.'s whereabouts, which he alleges prevented him from taking advantage of visitation with O.B. Although he was unaware at times of S.C.'s whereabouts, J.B. neglected to seek out contact information from S.C.'s parents despite having the ability to contact them via phone and mail.

J.B. further argues he was unable to conduct his visitation because the persons selected by S.C. to supervise the visitation were hostile toward him. S.C. approved of her parents supervising J.B.'s visitation and refused to approve J.B.'s mother as a supervisor. The stipulation and decree gave S.C. the power to approve a supervisor for J.B.'s visitation, and J.B. agreed to that provision. On appeal, he attacks neither the validity of the stipulation and decree nor the supervision provision. J.B.'s balking at visitation supervised by S.C.'s parents is not good cause for failing to take advantage of visitation opportunities. He testified that he "had to swallow my pride" to "go over there and be in their home and have a relationship with my daughter." However, his discomfort with the conditions of the stipulation and decree does not alter the abandonment of his relationship with his daughter.

J.B. acknowledges that his parental shortcomings, including his failure to seek visitation, may be attributable at least in part to his mental-health issues. He acknowledged diagnoses for bipolar disorder, massive depressive disorder, post-traumatic stress disorder, severe alcoholism, and anxiety and panic disorder. He received inpatient treatment for alcoholism in 2017, twice in 2018, and once in 2019. J.B. has a lengthy criminal history.

Despite his mental-health and substance-abuse issues, J.B. was able to work and make some, though not all, of the required child support payments in 2016 and 2017, during which time his efforts to connect with O.B. were negligible. His testimony at the hearing indicated he avoided visits with O.B. supervised by S.C.'s parents because he found their criticism of his substance-abuse issues to be overly hostile.

After years of scant efforts to contact O.B., J.B. responded to being served in the instant matter by threatening the life of the process server. J.B. admitted to alcohol use on September 8, 2019, despite the conditions of his pretrial release that required he abstain from the use of alcohol. He again violated his pretrial release conditions in early October, and criminal charges were filed on October 3 related to that violation.

We agree with the district court's determination that J.B. has abandoned O.B. within the meaning of section 600A.8(3)(b), and we affirm its decision on that ground.

B. Financial Support

Termination may occur under section 600A.8(4) when: "A parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause."

The stipulation and decree required J.B. to provide child support for O.B. in the amount of $469.43 per month beginning January 1, 2016. J.B. was also ordered to pay medical support in the amount of $145.83 per month beginning January 1, 2016. J.B. did not fulfill his financial obligations under the stipulation and decree of dissolution of marriage. Instead of monthly payments, records show the father made only two payments in 2019, three in 2018, ten in 2017, and seven in 2016. J.B. testified to starting employment as a project manager for a construction company in April 2019, yet he made no child support payment until July 29, 2019, approximately one month after he was served with the termination petition. With respect to his employment in 2018, J.B. testified that he "definitely

had the opportunity" to qualify for employment in jobs outside the construction industry but only held "some odd jobs" in 2018.

J.B. acknowledged that he had the opportunity to seek additional work but did not. He also made no contributions to O.B.'s support in the portions of 2019 during which he worked. Under these circumstances, there was not good cause for his failure to provide financial support to the child. We thus affirm the district court's finding under section 600A.8(4).

C. Best Interests

The court found that termination is in O.B.'s best interest. J.B. does not argue on appeal that termination is not in O.B.'s best interest, waiving this argument. See Iowa R. App. P. 6.903(2)(g)(3). However, we will not affirm termination unless we find that termination is in the child's best interests. See B.H.A., 938 N.W.2d at 232. Here, we find termination to be in O.B.'s best interests.

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Iowa Code § 600A.1(2).

Over O.B.'s life, her father has sought a minimal amount of visitation with her. He has not exercised visitation with his daughter in four and a half years—over half of the child's life. He is a stranger to his daughter. J.B. attributes this failure to his discomfort with aspects of supervised visitation that he agreed to in the dissolution stipulation and decree. Under these circumstances, we cannot say

J.B. has demonstrated "a genuine effort to maintain communication" with O.B., nor that he has maintained "a place of importance" in her life. *See id.* J.B. acknowledged in his testimony that it would not be fair to O.B. to make her wait for her father to be sober. O.B.'s stepfather has assumed the paternal role in the child's life. We agree with the district court's finding that termination is in O.B.'s best interests.

**Conclusion**

We find that J.B. has abandoned O.B. and failed to provide financial support within the meaning of chapter 600A. We conclude termination is in O.B.'s best interests, and we therefore affirm the termination of J.B.'s parental rights with respect to minor child O.B.

**AFFIRMED.**